PENACHIO MALARA LLP  
Attorney for the Debtor  
235 Main Street - Suite 600A  
White Plains, New York 10601  
(914) 946-2889  

Anne Penachio

HEARING DATE & TIME:  
DECEMBER 1, 2009 at 10:00 AM

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
WHITE PLAINS DIVISION  
------------------------------------------X

| | | |
|---|---|---|
| In re | : | CHAPTER 11 |
| RICHARDS CONDITIONING CORP., | : | CASE NO.: 09-22525 (ASH) |
| Debtor. | : | |

------------------------------------------X

**THE DEBTOR'S RESPONSE TO THE MOTION OF ACCORD PIPE FABRICATORS FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO ARTICLE 3-A OF NEW YORK LIEN LAW FOR AN ORDER REQUESTING PREPARATION OF A VERIFIED STATEMENT AND SEQUESTRATION OF FUNDS WITH THE CLERK OF THE COURT AND THE LIMITED OPPOSITION OF F.J. SCIAME**

TO:   **THE HONORABLE ROBERT D. DRAIN,**  
      **UNITED STATES BANKRUPTCY JUDGE**

The response of **RICHARDS CONDITIONING CORP.** (the "Debtor"), through its counsel, **PENACHIO MALARA LLP**, to the motion (ECF Entry #160) of **ACCORD PIPE FABRICATORS** ("Accord") respectfully set forth below.[1]

---

[1] The Debtor's principal, Martin M. Hopwood, Jr., has reviewed this opposition and has signed it in affirmation of the facts set forth.

1

## INTRODUCTION

1. The Debtor has no opposition, in sum and substance, to the relief sought in the application. The Debtor has already provided a comprehensive draft verified statement to Accord's counsel, counsel to Local 38, the United States Trustee, and counsel for F.J. Sciame. ("Sciame").

2. By the return date of this motion, the Debtor intends to have provided a copy of the verified statement to such interested parties as well as the Court. The Debtor recognizes that full disclosure is the touchstone of proceedings before this Court.

3. The Debtor submits this response to (i) provide the Court with background, (ii) preserve its rights with respect to allegations contained in the motion and (iii) request that Sciame also provide a copy of its statement to the Debtor, the United States Trustee's office and any interested party that requests a copy of same.

## DEBTOR'S BANKRUPTCY BACKGROUND

## BACKGROUND

4. On or about April 6, 2009 the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code.

5. Since the filing, the Debtor has continue the management of its business as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. No official committee of unsecured creditors or other statutory committee and no trustee or examiner has been appointed in this case.

7. The Debtor is engaged primarily in the business of installing and servicing

2

heating, ventilation and air conditioning systems for residential, industrial, and commercial public and private customers in new, existing and renovated buildings.

8. The Debtor also provides 24-hour equipment service and support to certain commercial customers. Approximately 20 customers have pre-paid for equipment servicing including AIG.

9. The Debtor had been experiencing financial reverses for the past few years as a result in the general downturn in the economy. Its bankruptcy filing was precipitated predominately by losses suffered in connection with contract bid work. The Debtor underestimated the cost of labor and material, and was undercapitalized for large projects resulting in factoring and penalty bank charges.

10. During this Chapter 11 proceeding, the Debtor has taken steps to operate more efficiently by reducing operating and overhead costs, pro-actively supervising field labor and eliminating the need for certain trade work such as insulating, plumbing and steam fitting (depending on the jurisdiction) . The Debtor also has focused on service work and small to mid-sized jobs ($3 million or less) which have proven to be more profitable.

11. Since the filing, the Debtor has cooperated with many of its secured and unsecured creditors in furtherance of its goal to reorganize. For example, the Debtor has worked with creditors, sub-contracts and general contractors to pay many trust fund claimants under Article 3A of New York's lien law. The Debtor has volunarily agreed to vacate the automatic stay with respect to equipment and vehicles that have become cost prohibitive to maintain. The Debtor continues to work with its secured lenders and has voluntarily submitted to comprehensive audits.

12. The Debtor has appeared at Section 341 meetings. The Debtor maintains appropriate insurance coverage (including liability, auto, and workers' compensation) and has provided proof of same to the office of the Untied States Trustee.

13. The Debtor has filed comprehensive operating reports for April, May, June, July and August, September and October. The initial four reports contained relatively minor errors.[2] Such reports were amended, verified and filed electronically on November 28, 2009. Reports for September and October were also filed on November 28, 2009.

14. It is submitted that the Debtor has acted in good faith and continues to do so.

### The Cooper Union Project

15. In or about June 2009, the Debtor concluded a major renovation project at the Cooper Union (the "Cooper Union Project"). Sciame was the general contractor.

16. The Cooper Union Project has involved numerous cost overruns and change orders. It proved to be extremely burdensome and unprofitable for the Debtor.

17. The Debtor did not post a bond on the Cooper Union Project. Upon information and belief, Sciame was covered from losses by a sub-guard insurance policy maintained with Zurich Insurance Company.

18. The Debtor believes that it may have been fraudulently induced into entering into the contract with Sciame and that Sciame and the owner intentionally concealed information which was material to the decision to enter into the contract. The Debtor is investigating the facts and circumstances and has made an application to this Court for an order

---

[2] The Debtor addresses this in detail in its opposition to the motion to convert its case to a Chapter 7 proceeding.

directing Sciame to produce documents pursuant to Bankruptcy Rule 2004 (ECF Entry # 151).[3] The Debtor is investigating whether it has any legal rights with respect to Sciame, its principals and officers, and the owner, including commencement of litigation.

19. Upon information and belief, Sciame has failed to pay Article 3-A claimants on the Cooper Union Project, despite collecting on the sub-guard insurance policy. Moreover, upon information and belief, Sciame did not pro rate payments made to vendors. Rather, it selected who it paid, preferring certain vendors, such as Simms, to others.

20. In addition to potential fraud claims, the Debtor alleges that Sciame owes it approximately $110,000.00 for services rendered by the Debtor post-petition. Sciame has refused to make payment. The Debtor had intended to use the bulk of the amount due to satisfy :Local 38, Article 3-A claimants, and/or outstanding payroll taxes.

21. In order to preserve its rights, the Debtor has filed a mechanics lien against the leasehold interest of Cooper Union in the amount of $3,290,000.00.

22. As the Debtor's verified statement will demonstrate, neither it or its principals diverted any trust funds.

## SCIAME MUST PROVIDE A VERIFIED STATEMENT

23. Sciame paid many vendors and Article 3-A claimants directly, through joint checks payable to the Debtor and to the vendor and through direct payments. The Debtor, its creditors and interested parties are entitled to know which creditors have been paid on the job and whether certain creditors have received preferable treatment.

24. Sciame filed limited opposition to the motion (ECF Entry # 194). In the opposition, Sciame argues primarily that (i) funds should only be segregated if they are

---

[3] Sciame has interposed opposition to the Debtor's 2004 application (ECF # 175) and has not produced a single document to the Debtor. On the contrary, the Debtor cooperated with Sciame, informally agreed to limit the scope of the 2004 and has produced documents to Sciame's counsel and appeared at an examination (ECF Entries 161 and 182).

5

determined by the Court after a hearing to constitute a trust fund assets and (ii) Sciame or its counsel should hold any cash identified or determined to be a trust fund asset.

25. This Court should reject Sciame's position that a Court must determine whether funds constitute trust funds before such funds are segregated. This could potentially delay the turn-over of funds to the trust fund claimants. As an alternative, the Court should direct that all funds which could be identified as trust funds be placed in escrow and released only upon order of the Court. This will prevent diminution of trust fund assets and preference of vendors by Sciame.

26 This Court should similarly reject Sciame's request to hold the funds identified as trust funds. While the Debtor does not object to Sciame's bankruptcy counsel, David Wander, holding the funds, it is manifestly inappropriate for Sciame to hold the funds.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the appropriate order and further relief as it may deem proper.

Dated: White Plains, New York
November 28, 2009

**PENACHIO MALARA LLP**

By: /s/ Anne Penachio
Anne Penachio
Counsel for the Debtor
235 Main Street - Ste 600A
White Plains, NY 10601
(914) 946-2889

/s/ _____
Martin M. Hopwood, Jr.

6