UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                              : Chapter 11
                                                                         :
RICHARDS CONDITIONING CORP.,             : Case No. 09-22525 (RDD)
                                                                         :
                                   Debtor                       :
                                                                         :
----------------------------------------------------------X

**EXAMINER'S REPORT
ON DEBTOR'S HANDLING OF TRUST FUNDS**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

Introduction

This report is respectfully submitted by M. Jacob Renick, CPA/CFF, CIRA, CDBV, CFE, the examiner ("Examiner") appointed in this chapter 11 case, pursuant to the Order of the Court of February 9, 2010.

In the January 22, 2009 Order Denying Motion of Creditors Sheet Metal Workers Funds Of Local 38 For Conversion Of Debtor's Chapter 11 Case And Directing The Appointment of An Examiner And Specifying Scope Of Examiner's Investigation And Duties Pursuant To Sections 1104(c)(1) and 1106(b) of The Bankruptcy Code, the Court specified that as part of his/her investigation, the Examiner should report to the court, among other matters, the Debtor's handling of trust funds.

Trust Funds Under New York Lien Law

In New York, trusts and trust funds are included under Article 3A of the New York Lien Law ("Lien Law"). Although the Examiner has provided professional services in

- 1 -

matters where there were issues relating to trust funds, the Examiner is not an attorney and his knowledge and understanding of many of the issues relating to trust fund are somewhat limited. In order to gain a better understanding of trust funds and some of the related issues, the Examiner reviewed the materials on the subject included in the volume entitled New York Construction Law Manual, Second edition (2006), authored by Robert A. Rubin, Esq., Sarah B. Biser, Esq. and Catherine Kettle Brown, Esq.; published by Thomson West. In addition, the Examiner reviewed various sections relating to liens and trust funds of the Lien Law and related cases.

In summary, under New York law, trust funds arise from the receipt of monies arising for claims relating to the cost of improvement to real property. The Lien Law describes (§ 70) "trust funds," in part, as, "the funds ...received by an owner... or received by a contractor under or in connection with a contract for an improvement of real property... or received by a subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property ... made with any subcontractor under any such contract, and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter." (§ 71 includes a discussion of trust claims and beneficiaries.)

The term "improvement" includes the demolition, erection, alteration or repair of any structure and any work done upon such property or materials furnished for its permanent improvement.

The term "cost of improvement" includes expenditures incurred by the owner in paying the claims of a contractor, a subcontractor, laborer and materialman arising out of the improvement.

A "materialman" is any person who furnishes material or the use of machinery, tools, or equipment... for such improvement.

### The Business of the Debtor

The Debtor is a full service mechanical contractor that services equipment, fabricates and installs sheet metal systems and installs hot water, steam, chilled water and process systems. Consequently, in some instances the Debtor may be a contractor, subcontractor and/or materialman. Accordingly, the debtor in its capacity as a materialman would include its cost of fabrication, including materials, equipment use and other direct overhead items, but not corporate administrative overhead.

### Allocation of Direct Overhead Costs

The amount of rent and other overhead items (i.e. insurance, financing costs and fabrication costs and project management) charged by the Debtor to any particular job is based upon the percentage of billing for that job divided by the billings for all jobs during the applicable period applied to the various overhead expenses.

### Rent

Included in Debtor's allocation of direct overhead is an allocation of 83% of its monthly rent of $25,000, which is payable under a one page agreement with HFP Investment Co. ("HFP"), a related entity. The 83% was calculated based upon the use of 18,1815 square feet of the building's 22,673 square feet for fabrication, materials storage, etc.

When questioned by the Examiner as to the fairness of the monthly rent amount (i.e. $25,000.00) being charged by HFP, the Debtor provided the Examiner with an Appraisal of Property ("Appraisal") prepared by Houlihan & O'Malley Real Estate Services, Inc. 70 Marbledale Road, Tuckahoe, the premises occupied by the Debtor. The Appraisal indicated that it had been submitted to Hudson Valley Bank and that the valuation date was as of May 2, 2006.

The Appraisal included a listing of 5 properties in the area which it used for its comparables. Base rent for the 5 properties ranged from $10.00 to $14.00 per square foot, before escalations for real estate taxes. By including all of the 5 comparables, the Examiner calculated the average per square foot rent at $12.10; eliminating the high and the low, the average square foot rent calculated at $12.17. Assuming a real estate tax escalation of $.50 per year for 2 years (the Appraisal date was May 2006), the average annual rent per square foot would be $13.17. According to the Appraisal, the building contains 22,673 square feet of space on a lot size of 39,603 square feet. By applying the $13.17 per square foot rental cost to the 22,673 square feet of space occupied by the Debtor, the total annual rent calculates to $298,603 or $24,883 per month, for which the Debtor is paying $25,000.

Supervision (Project Management)

In determining the cost of improvement, supervision may be subject to the Lien Law, as stated, "one who supervises the improvement of real property at the request of the owner, such as a construction manager, performs work that may form the basis of a mechanic's lien." (New York Construction Law Manual §9.3, citing Carl A. Morse, Inc. v. Rentar Indus. Development Corp., 85 Misc. 2d. 304, 379 N.Y.S.2d 994 (Sup 1976), order aff'd, 56 A.D.2d 30, 391N.Y.S.2d. 425(2d Dept 1977), order aff'd, 43 N.Y.2d 952, 404 N.Y.S.2d.343, 375 N.E.2d.409 (1978).) Consequently, a Debtor could be the beneficiary of a trust where funds are received for supervision (i.e. project management).

The Debtor utilizes one or more of its shareholder-officers to supervise larger jobs. (On smaller jobs, the Debtor does not usually allocate supervision.) Accordingly, the Debtor allocates, based on hours, a fixed hourly rate that is comparable to what other HVAC contractors charge, less 15% for overhead and profit.

- 5 -

Payments to Trust Beneficiaries

Included in §74 of the Lien law is the right of the trustee to determine the order and manner of payment of any trust claim and to apply any trust asset to any purpose of the trust. Consequently, the trustee can favor one beneficiary over another in the payment of trust funds, providing that only beneficiaries of a particular trust can be paid from that trust. Therefore, if insufficient funds have been received to pay all beneficiaries, a trustee can decide who to pay and who not to pay. In cases where the Debtor has received insufficient funds to pay all beneficiaries, it has, at times, paid its costs, as either a sub-contractor or as a materialman (but not its administrative overhead), instead of other beneficiaries.

Recordkeeping

§ 75 of the Lien Law indicates that separate bank accounts need not be maintained, however, the trustee must maintain sufficient records to, among other things, determine to whom the trust assets are payable, their addresses, and the amounts owed .

The Debtor does not maintain separate bank accounts, but maintains sufficient records to determine the names, addresses and amounts owed to any beneficiary to whom trust funds would be payable.

Dated: May 6, 2010
       New York, New York

                                    Respectfully submitted,

                                    /s/M. Jacob Renick
                                    M. Jacob Renick,
                                    CPA/CFF, CIRA, CDBV, CFE
                                    Examiner

NHB Advisors, Inc.
Chrysler Building
405 Lexington Avenue- 26th Fl.
New York, NY 10174
(914) 813-0880