

## *Kevin G. Roe*

ATTORNEY AT LAW
425 SUMMIT AVENUE
HACKENSACK, NJ 07601

MEMBER
N.J. & N.Y. BARS

(201) 489-6777
FAX (201) 489-5914

October 26, 2011

**VIA PACER ONLINE FILING**
**United States Bankruptcy Court**
**Southern District of New York**
**White Plains Division**

      Re:    Richards Conditioning Corp., v. Lawrence P. Hopwood
               Chapter 11 Case No.: 09-22525(RDD)
               Adv. Pro. No.: 10-08408(RDD)

Dear Sir/Madam:

    Enclosed please find defendant Lawrence Hopwood's opposition to Plaintiff's motion for Summary Judgment returnable to the court for October 31, 2011.

    Thank you for your courtesies.

Very truly yours,

KEVIN G. ROE

**VIA OVERNIGHT MAIL**
**Cc.: Anne Penachio**
**Counsel for the Plaintiff**
**235 Main Street**
**White Plains, NY 10601**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| IN RE: RICHARDS CONDITIONING CORP., | CHAPTER 11 |
| *Debtor.* | CASE NO.: 09-22525 (RDD) |
| RICHARDS CONDITIONING CORP., | |
| *Plaintiff,* | |
| v. | ADV. PRO. NO.: 10-08408 (RDD) |
| LAWRENCE P. HOPWOOD, | |
| *Defendant.* | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY
JUDGMENT UNDER BANKRUPTCY RULE 7056**

### I.     PRELIMINARY STATEMENT

Lawrence P. Hopwood, defendant in the above captioned matter, submits this
Memorandum of Law in opposition to Plaintiff Richards Conditioning Corp.'s motion for
summary judgment under Federal Rule of Bankruptcy Procedure 7056 (i) granting judgment on
its Fourth, Fifth, Sixth, Eighth, and Ninth Causes of action asserted in its amended complaint and
(ii) dismissing defendant's counter-claim.

### II.     COUNTERSTATEMENT OF THE FACTS OF THE MOTION

The facts are more fully set forth in the declaration of Lawrence P. Hopwood dated
October 15, 2011 (the "L. Hopwood Aff.") as well as the Declaration of Matthew Kolb dated

October 26, 2010 (the "Kolb Aff."). Defendant will also in part rely on the Affirmation of Martin

M. Hopwood (the "M. Hopwood Aff.") dated July 27, 2011, previously filed with this court.

The defendant is the brother of Martin N. Hopwood, the Debtor's president and Richard

Hopwood, its vice president. M. Hopwood Aff. at 11. The defendant served as an employee and

Officer of the Plaintiff from on or about 1977 to early 2008 when he resigned. M. Hopwood Aff.

at 9-10.   In 1976, defendant became employed on a full time basis performing service and

maintenance on residential, commercial and industrial systems. L. Hopwood Aff. at 4. Defendant

was responsible for the installation, service and repair of heating and air-conditioning systems

which work was performed for five to six years. Id.   Thereafter, defendant became more

involved in the sheet metal and drafting of system designs for commercial and industrial

ventilation systems which work was performed for the next ten to twelve years. Id. Defendant

thereafter moved into a managerial position which included manpower supervision, bidding and

estimating, procurement and purchase of equipment and overall supervision of all contracts and

projects. Id.

While defendant successfully managed the affairs and business of the Plaintiff, Martin

Hopwood pursued a fledgling legal career where he was phased out when he failed to make

partner and pursued a second unsuccessful career in real estate development where once again he

was forced out. Id. at 5.   Martin Hopwood thereafter sought refuge in the family business,

claiming himself to be capable and worthy of an upper management position, seeking equal

status and compensation that Lawrence P. Hopwood had earned over many long years of hard

work. Id.   Once in this position, Martin continued his ineptitude in managing the day to day

financial affairs of Richards Conditioning Corp. and its other subsidiaries run by his brother

Richard Hopwood Jr.. Id.

Martin's tenure commenced in or around 1996 and continued until 2006, when Lawrence approached him insisting that the business had to move forward and become more profitable by engaging in regularized business and accounting practices to allow the growth which he had developed over the past twenty (20) years. Id. To this end, the Debtor engaged the services of Mr. Matthew Kolb, an individual with extensive background and expertise in financial matters. Mr. Kolb thereafter worked for Debtor for the next two (2) years during which time he encountered substantial resistance and lack of cooperation from Martin in producing timely financial statements necessary to conduct a proper evaluation and analysis of the Debtor. Id. The information provided was usually incomplete and failed to comply with general accepted accounting practices normally observed. Id. It was during this time that Mr. Kolb discovered that the business of the Debtor was compromised and imperiled through excessive overhead and executive compensation, and the underwriting of subsidiaries run by Richard Hopwood. Id. It was upon this discovery that it became clear to the defendant that the business of the Debtor could not survive through such excessive compensation, including country club memberships, automobiles and the like, while at the same time underwriting the three failed subsidiaries run by Richard Hopwood. Id.

In March 2008, defendant Lawrence Hopwood made known to his brothers Martin and Richard his dissatisfaction with the performance of their duties as employees of the debtor, his concern that the debtor could not survive with the two in their positions, and his desire to buy out his brothers' interest in the family business. Id. at 6. Defendant's offer was rejected, but met with a counter-offer from his brothers to buy out his interests in the family business, which was eventually accepted. Id. Mr. Matthew Kolb acted as mediator between the parties in arriving at terms mutually acceptable to all. Id. The negotiations are reflected in the attached emails. The

agreement consisted of (i) transfer by Defendant of his stock in debtor to his brothers; (ii) payment by Martin and Richard Hopwood to the Defendant over a period of five (5) years personally guaranteed by them; (iii) a prohibition against competition by Lawrence with respect to existing customers of Richards Conditioning; and (iv) release of defendant from any liability for debts of Richards by Martin and Richard Hopwood. L. Hopwood Aff. at 45. The Plaintiff thereafter filed for Chapter 11 relief on April 6, 2009 and commenced this adversarial proceeding seeking to recoup monies paid to Lawrence by his brothers pursuant to the buy-out agreement.

III.    **DISCUSSION**

**SUMMARY JUDGMENT STANDARD**

When "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Bankruptcy Rule 7056; Celotex v. Catrett 477 U.S. 317 (1986); Anderson v. Liberty Lobby Inc. 477 U.S. 242, 247-248 (1986). It is the role of the court to examine the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists rather than for the purpose of resolving that issue. Federal Labs., Inc. v. Barringer Research Ltd., C.A.3d, 1982, 696 F.2d 271, 274. The burden of demonstrating the absence of any genuine issue of material fact falls upon the moving party, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the opposing party. Anderson at 249. Where there is significant probative evidence is presented by the opponent, a motion for summary judgment must be defeated. Id.

**A. THE TRANSFER OF THE WITHIN REFERENCED FUNDS TO LAWRENCE P. HOPWOOD CONSTITUTES A PERSONAL TRANSACTION BETWEEN THE**

**DEFENDANT, MARTIN HOPWOOD, AND RICHARD HOPWOOD, AND IS THEREFORE NOT GOVERNED BY 11 U.S.C. § 547 OR NY BCL § 513(a).**

**i. DEFENDANT LAWRENCE P. HOPWOOD IS NOT A CREDITOR WITHIN THE MEANING OF §101(10) OF THE BANKRUPTCY CODE.**

The term creditor means an entity that has: (1) a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (2) a claim against the estate of a kind specified in the Code; or (3) a community claim. 11 U.S.C.A. § 101(10)(a); 11 U.S.C.A. § 101(10)(b) (referring to 11 U.S.C.A. §§ 348(d), 502(f) to (i); 11 U.S.C.A. § 101(10)(c).

The Bankruptcy Code provides clear language which governs the issue at hand. A creditor is that which as a claim against a *debtor* (emphasis added). §101(10) clearly addresses financial transactions in which a debtor-corporation assumes a debt which results from an agreement with a creditor. The Code referenced herein, and cited by the Plaintiff, does not address obligations assumed personally by directors or officers of a debtor-corporation in instances where those directors personally assume the rights and obligations of a former insider.

In the case *sub judice*, the nature of the buy-out agreement between Lawrence P. Hopwood, Martin Hopwood, and Richard Hopwood clearly removes the defendant from the definition of a creditor as defined in § 101(10). As set forth more fully in the Declaration of Lawrence P. Hopwood, the defendant, in March 2008, sought to buy out the interests of his brothers. L. Hopwood at 6. When that offer was rejected, Martin and Richard Hopwood proposed terms by which the defendant would relinquish all of my ownership interest in Debtor as compared to the severance package with retention of an ownership interest as misrepresented to the Court by Martin and Richard. Id. Notably, the word "severance" never appeared in any email in which the buyout agreement was explicitly described and referenced. Id.

The series of e-mails, annexed hereto, clearly reflect the fact that the negotiations were exclusively amongst the brothers Hopwood. The parties to the agreement were Lawrence, Martin, and Richard Hopwood in their individual capacities and not as agents, officers, directors, or owners of Richards Conditioning Corp. Despite contentions to the contrary, the buy-out in question was personal in nature, whereby Martin and Richard Hopwood would *personally* assume the obligations of Lawrence. The monies owed to Lawrence P. Hopwood are owed by Martin and Richard Hopwood, and not by Richards Conditioning, Corp. Thus, defendant is not a creditor within the meaning of § 101(1), and transfers of previous funds are not voidable under 11.

In support of Plaintiff's position, counsel cites as controlling law In re Flying Mailmen Service, Inc. 539 F.2d 866 (2d Cir. 1976). This reliance is misplaced. In re Flying Mailmen Service, Inc. stands for the general proposition that a corporation may not make installment payments to purchase its own shares of stock when it is insolvent or would be rendered insolvent, even though the stock purchase agreement may have been made when the corporation had a surplus sufficient to cover the entire purchase price, and title to the stock has been transferred. In that case, appellant Charles Gold entered into an agreement with the corporation dated December 16, 1970 whereby Gold's claims would be compromised and his stock repurchased by the Corporation. As detailed above, no such transaction occurred in the instant case. Rather, the transaction was between the Hopwoods in their independent, personal capacities. Furthermore, the debtor-corporation in In re Flying Mailmen Service, Inc. granted Gold security interests in all of the assets owned by Flying Mailmen, including accounts receiveable, fixtures and equipment, motor vehicles, and all other assets owned or to be owned in the future. Id. at 868. In the present case, Lawrence P. Hopwood was granted no similar security

interest. In fact, the essence of the transaction was the complete relinquishment of his rights in Richards Conditioning Corp. so as to move on in his professional career.

The foregoing amply states the presence of a genuine issue of material fact, to wit, the existence and nature of an agreement, between Lawrence P. Hopwood, Martin Hopwood, and Richard Hopwood, each acting in their personal capacities, and independent of their official positions in Richards Conditioning Corporation.

ii.    **SIGNIFICANT QUESTION OF MATERIAL FACT EXISTS AS TO THE INSOLVENCY OF THE PLAINTIFF**

In their Motion for Summary Judgment, the Plaintiff sets forth the indisputable fact of the insolvency of Richards Conditioning Corporation. The Bankruptcy Code defines insolvency as the financial condition in which the "sum of [an] entity's debts is greater than all of such entity's property." 11 U.S.C. § 101(32)(A). As Plaintiff notes, it is within the power of the Bankruptcy Court to use broad discretion when considering evidence to support a finding of insolvency. Klein v. Tabatchnick 610 F.2d 1043, 1048 (2d. Cir. 1979).

In support of this contention, Plaintiff relies heavily on Schedules, the Claim Register, the Examiner's Report, and Statements of Martin Hopwood. It is respectfully submitted to this court that the foregoing provide an incomplete and misleading accounting of Richards Conditioning Corporation. As previously noted, Mr. Matthew Kolb, an independent financial consultant and advisor, was engaged by Richards to determine and establish a business plan to help the company grow and become profitable. In the annexed Declaration (Kolb Declaration), Mr. Kolb draws certain conclusions based on his review of the Examiner's report and knowledge of the within matter. While the observations are more fully set forth in his Declaration, they include (1) conclusions that the data used represented a small sample of the Richards business and is not a

reliable report upon which to draw conclusions as to Plaintiff's insolvency; (2) observations of transfers made by Mr. Martin Hopwood to his personal account, suggesting financial impropriety and breach of fiduciary duty; (3) Martin Hopwood's continued frustration of Mr. Kolb's ability to make an independent assessment by withholding crucial information; and (4) the overall incomplete nature of the report itself, which was prepared for the limited purposes of a particular lawsuit, failing to tell the full story. <u>Kolb Declaration</u> at 6.

On information and belief, and contrary to the contention of the Plaintiff, Richards Conditioning Corp. did not become insolvent until after the time at which Lawrence P. Hopwood had completed his exit from the company. Furthermore, given the nature of the Stock Purchase Agreement, detailed above, it is believed that a full, and independent audit of Richards Conditioning Company, done through the mechanisms of discovery, would be probative on the very nature of that agreement, on whose behalf said funds were paid to defendant, including the source of same, as well as the timing of and reasons for the company's insolvency.

In view of the foregoing, it is respectfully submitted that the question of the circumstances of the insolvency of the Plaintiff present a further genuine issue of material precluding the entry of Summary Judgment on behalf of the movant.

### iii. STOCK PURCHASE AGREEMENT BETWEEN DEFENDANT LAWRENCE P. HOPWOOD, MARTIN HOPWOOD, AND RICHARD HOPWOOD IS NOT RENDERED VOID BY NY GOL 5-701, STATUTE OF FRAUDS.

Under the New York Statute of Frauds:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: (1) By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed

before the end of a lifetime; (2) Is a special promise to answer for the debt, default or miscarriage of another person; (3) Is made in consideration of marriage, except mutual promises to marry; (4) *Repealed*; (5) Is a subsequent or new promise to pay a debt discharged in bankruptcy; (6) Notwithstanding section 2-201 of the uniform commercial code, if the goods be sold at public auction, and the auctioneer at the time of the sale, enters in a sale book, a memorandum specifying the nature and price of the property sold, the terms of the sale, the name of the purchaser, and the name of the person on whose account the sale was made, such memorandum is equivalent in effect to a note of the contract or sale, subscribed by the party to be charged therewith; (7) *Repealed*; (8) *Repealed*; (9) Is a contract to assign or an assignment, with or without consideration to the promisor, of a life or health or accident insurance policy, or a promise, with or without consideration to the promisor, to name a beneficiary of any such policy. This provision shall not apply to a policy of industrial life or health or accident insurance; (10) Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman. NY GOL 5-701(a).

Not withstanding the foregoing, an agreement, promise, undertaking or contract, which is valid in other respects and is otherwise enforceable, is not void for lack of a note, memorandum or other writing and is enforceable by way of action or defense provided that such agreement, promise, undertaking or contract is a qualified financial contract. NY GOL 5-701(b)(1). A qualified financial contract is defined in pertinent part as:

"…for the assignment, sale, trade, participation or exchange of indebtedness or claims relating thereto arising in the course of the claimant's business or profession (including but not limited to commercial and/or bank loans, choses in action arising under or in connection with loan agreements and private notes, and including forward sales), but only to the extent that such indebtedness or obligation

was not incurred by a natural person primarily for personal, family or household purposes." NY GOL 5-701(b)(2)(i).

NY GOL 5-701(b)(1) further requires sufficient evidence of the existence of an agreement, which is satisfied upon a showing that "There is evidence of electronic communication (including, without limitation, the recording of a telephone call or the tangible written text produced by computer retrieval), admissible in evidence under the laws of this state, sufficient to indicate that in such communication a contract was made between the parties." NY GOL 5-701(b)(3)(a). Furthermore, the tangible written text produced by telex, telefacsimile, computer retrieval or other process by which electronic signals are transmitted by telephone or otherwise shall constitute a writing and any symbol executed or adopted by a party with the present intention to authenticate a writing shall constitute a signing. NY GOL 5-701(b)(4).

Plaintiff's assertion that the Stock Purchase Agreement entered into by Lawrence P., Martin, and Richard Hopwood is void under the New York Statute of Frauds is incorrect. Annexed hereto, the Court shall find a series of e-mail exchanges between the foregoing persons evidencing ongoing negotiations between same, and resulting in an agreement by which Martin and Richard Hopwood agree to buy out Lawrence P. Hopwood's interests in Richards Conditioning Corp. in their capacity as individuals, not corporate officers. The foregoing e-mails may be authenticated by the parties and are sufficient to evidence an agreement within the clear terms of NY GOL 5-701.

Furthermore, it is a well settled principle of or laws that, notwithstanding the demands of the Statute of Frauds, that performance by a party or the parties, under certain circumstances, will remove the bar of the Statute of Frauds and recognize an agreement that has not been reduced to a singular writing. The doctrine of part performance, as an exception to Statute of

Frauds, is based on principles of equity, and specifically, recognition of the fact that it would be a fraud to allow one party to a transaction to escape performance after permitting the other party to perform in reliance on the agreement. <u>Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group PLC</u>, 711 N.E.2d 953. Because the doctrine of part performance is based upon the equitable principle that it would be a fraud to allow one party, insisting on the Statute, to escape performance after permitting the other party, acting in reliance, to substantially perform, the acts of part performance must have been those of the party insisting on the contract, not those of the party insisting on the Statute of Frauds. <u>Id</u>.

It is respectfully submitted that the existence of and sufficiency of an agreement under the New York Statute of Frauds, as defined in NY GOL 5-701, presents a substantial and genuine issue of material fact. This is sufficient to preclude an Order of Summary Judgment under F.R.C.P. 56 in favor of the movant.

## **CONCLUSION**

In view of the foregoing, and on the strength of the authorities cited and exhibits submitted, it is respectfully submitted that genuine issues of material fact exist with regard to (i) the nature of the agreement between Lawrence P. Hopwood, Martin Hopwood, and Richard Hopwood which was executed in their individual capacities, (ii) the circumstances and timing of Plaintiff's insolvency and the sufficiency and reliability of the evidence to that claim, and (iii) the sufficiency of the electronic transmissions evidencing an agreement and their conformity with the New York Statute of Frauds.

Dated: *10/26/11*

KEVIN G. ROE, ESQ.
ATTORNEY FOR DEFENDANT
LAWRENCE P. HOPWOOD
425 Summit Avenue
Hackensack, New Jersey 07601
(201) 489-6777
kevingroe@hotmail.com

# EXHIBIT A

**KEVIN G. ROE**
**425 SUMMIT AVENUE**
**HACKENSACK, NEW JERSEY 07601**
**(201) 489-6777**
**ATTORNEY FOR DEFENDANT**

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK
### WHITE PLAINS DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| **RICHARDS CONDITIONING CORP.,** *Debtor.* | **CASE NO.: 10-22507(RDD)** |
| **RICHARDS CONDITIONING CORP.,** *Plaintiff,* | |
| v. | **Adv. Pro No.: 10-08408(RDD)** |
| **LAWRENCE P. HOPWOOD,** *Defendant.* | |

STATE OF NEW JERSEY    )
                                               : ss:
COUNTY OF BERGEN        )

### DECLARATION OF LAWRENCE P. HOPWOOD

**LAWRENCE P. HOPWOOD** declares and states:

1.  I am the defendant in the above matter and make this Declaration in opposition to debtor's motion for summary judgment in the above matter.  I have personal knowledge of the facts alleged herein based upon the events leading up to my relinquishment of any and all ownership interest in the Debtor and pursuant to a buyout agreement entered into and performed by the parties.  Unfortunately, the examiner's report fails to disclose the entire story of the

problems with Debtor based on the fact that the examiner was only provided with selective information by my two brothers, which was part of the major underlying reason for my departure from Debtor.  The loans allegedly made by my brothers are illusory and disclose a pattern of self dealing most suspicious under circumstances.

2.   Annexed hereto is the declaration of Mathew Kolb detailing his knowledge of the circumstances set forth herein.  Mr. Kolb is prepared to appear and testify at the trial of this matter establishing the fact that I had entered into the agreement with my brothers following extensive negotiations during which all parties where represented by independent counsel. The agreement was made between myself and my two brothers, for the purchase of my interest in the debtor, to which agreement the debtor was not a party. The whole basis upon which summary judgment is sought would require a finding of fact that the debtor was a party to the agreement, pursuant to which I was paid. This claim is flatly rejected as evidenced by the e-mails annexed hereto, identifying myself and my brothers only as the parties to the agreement, payment of which was personally guaranteed by my brothers. Although never reduced to writing, the e-mails clearly identify the terms of the agreement, which were thereafter performed by my brothers for nearly a year prior to the commencement of the bankruptcy proceeding. The performance of the terms of the agreement verifies its existence and any attempt by Martin or Richard Hopwood to dispute same creates a genuine issue of material fact in dispute precluding the entry of summary judgment.

3.  It is necessary for this Court to understand the full facts and circumstances surrounding the insolvency of Debtor occasioned as a result of the mismanagement of my brothers, Martin Hopwood, Jr. and Richard Hopwood.  Moreover, the Court should be aware that

my brothers have purposely misrepresented my status to the Court as a "shareholder": of the

Debtor, knowing full well that doing so would make me liable for reimbursement to Debtor of

monies rightfully paid to me as part of a buyout agreement.  In fact, my brothers have

perpetrated a fraud upon the Court by misrepresenting me to be an owner or "insider" who would

be liable for such repayment if this were true, which it is not.  Furthermore, a careful review of

the examiner's report, even based upon the limited information provided, reveals that my

brothers are more answerable under the theory upon which they proceed than anyone.

## GENUINE ISSUES OF MATERIAL FACT EXIST PRECLUDING ENTRY OF SUMMARY JUDGMENT

4.  I had been employed by Debtor since working part-time through high school and

college during which I learned the heating and air conditioning business.  In 1976, I became

employed on a full time basis performing service and maintenance on residential, commercial

and industrial systems.  I was responsible for the installation, service and repair of heating and

air-conditioning systems which work I performed for five to six years.  Thereafter, I became

more involved in the sheet metal and drafting of system designs for commercial and industrial

ventilation systems which work I performed for the next ten to twelve years.  During this phase

of my career, I was afforded the opportunity to comprehensively learn the industry from sheet

metal fabrication to system design and installation as well as maintenance and service.  During

this period I moved through the journeyman classification to the point where I was accepted in

the union with full mechanic status.  From this point, I moved into a managerial position which included manpower supervision, bidding and estimating, procurement and purchase of equipment and overall supervision of all contracts and projects.

5.  Meanwhile, my brother Martin Hopwood, pursued a fledgling legal career where he was phased out when he failed to make partner and pursued a second unsuccessful career in real estate development where once again he was forced out.  He thereafter sought refuge in the family business, claiming himself to be capable and worthy of an upper management position, seeking equal status and compensation that I had earned over many long years of hard work. Once in this position, benevolently conferred by my parents, Martin continued his ineptitude in managing the day to day financial affairs of Richards Conditioning Corp. and its other subsidiaries run by my brother Richard Hopwood Jr.  This role continued for approximately ten (10) years, during which time the business of Richards Conditioning Corp. grew to the extent that his mismanagement was not readily apparent, or successfully concealed, due to poor record keeping with no accountability.  Martin's tenure commenced in or around 1996 and continued until 2006, when I approached him insisting that the business had to move forward and become more profitable by engaging in regularized business and accounting practices to allow the growth which I had developed over the past twenty (20) years. To this end, the Debtor engaged the services of Mr. Matthew Kolb, an individual with extensive background and expertise in financial matters. Mr. Kolb thereafter worked for Debtor for the next two (2) years during which time he encountered substantial resistance and lack of cooperation from Martin in producing timely financial statements necessary to conduct a proper evaluation and analysis of the Debtor. The information provided was usually incomplete and failed to comply with general accepted accounting practices normally observed.  It was during this time that Mr. Kolb discovered that

the business of the Debtor was compromised and imperiled through excessive overhead and executive compensation, and the underwriting of subsidiaries run by my brother Richard Hopwood. It was upon this discovery that it became clear to me that the business of the Debtor could not survive through such excessive compensation, including country club memberships, automobiles and the like, while at the same time underwriting the three failed subsidiaries run by my brother Richard Hopwood. These subsidiaries, L & M Distributors, Allied Products and Task U.S.A., all wholesale distributors of heating and air-conditioning products, failed to compete in the open market and were nothing more than safe havens to keep my brother Richard employed.

6. In March 2008, it had reached the point where I was prepared and made an offer to buy out my brothers' interest in the family business, realizing that my efforts were responsible for whatever positive cash flow the business of Debtor was able to generate. To this end, I made an offer to buy my brothers out, which offer was rejected, but met with a counter-offer to buy my interests out, which I eventually accepted. Mr. Matthew Kolb acted as mediator between my brothers and I in arriving at terms mutually acceptable to all. Mr. Kolb acted as a go between in the negotiation of this buyout, the terms of which became memorialized in a series of emails which are annexed hereto. The emails were directed to and between my attorney at the time, Mr. David O. Fuller Jr. of Bosworth, Gray and Fuller and Glenn Backer, Esq. on behalf of my brothers. These emails clearly and specifically refer to a buyout agreement in which I was to relinquish all of my ownership interest in Debtor as compared to the severance package with retention of an ownership interest as misrepresented to the Court by my brothers. Notably, the word "severance" never appeared in any email in which the buyout agreement was explicitly described and referenced.

7. The foregoing should amply demonstrate to the Court that I had relinquished all ownership and control of the Debtor and was paid pursuant to a schedule agreed to and performed by my brothers who retained ownership and control of Debtor. After March 2008, I was no longer an "insider" whereby any payments made to me are subject to avoidance and reimbursement to the Debtor. Any characterization to the contrary by my brothers is simply untrue as they surely would never have paid the sums in question unless in exchange for my relinquishment of ownership of the Debtor. The sad truth is that Debtor became insolvent following my departure from the company due to the fact that I was the only individual responsible for positive cash flow into the Debtor which kept it solvent for the many years prior to my departure.

8. I have read the plaintiff's motion papers, pleadings and supporting documents and as stated more fully herein, I dispute the statements contained therein.

9. I have read the above statement and it is true and accurate to the best of my knowledge and recollection.

LAWRENCE P. HOPWOOD

Sworn to me this _5_ day of October, 20 _11_ .

KEVIN G. ROE
Notary Public of the State of New York
Commission Expiration: 7/25/2015
02R06245506

# EXHIBIT B

KEVIN G. ROE
425 SUMMIT AVENUE
HACKENSACK, NEW JERSEY 07601
(201) 489-6777
ATTORNEY FOR DEFENDANT

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

| | |
|---|---|
| In re: | **CHAPTER 11** |
| RICHARDS CONDITIONING CORP.,<br>*Debtor.* | **CASE NO.: 10-22507(RDD)** |
| RICHARDS CONDITIONING CORP.,<br>*Plaintiff,*<br><br>v.<br><br>LAWRENCE P. HOPWOOD,<br>*Defendant.* | **Adv. Pro No.: 10-08408(RDD)** |

STATE OF NEW JERSEY )
                     : ss:
COUNTY OF BERGEN )

## DECLARATION OF MATTHEW KOLB

**Matthew Kolb** declares and states:

1. I was engaged by Debtor, Richards Conditioning Corp. (hereinafter "Debtor"), from 2006 to March 2008, as an independent consultant and financial advisor to determine and establish a business plan to help the company to grow and become profitable. I worked approximately twenty (20) hours a week and have personal knowledge of the facts alleged herein.

2. It was my function to perform a cost analysis based upon review of financial records kept and maintained by Debtor in the ordinary course of its business. I was called upon to conduct a financial analysis of the bidding process at the request of Lawrence P. Hopwood together with his brothers in order to help organize the company to allow future growth. My job included a review of their accounting practices as well as inventory management and human resource development.

3. Throughout the course of my tenure with the Debtor, I repeatedly encountered frustration and delay through the untimely production of financial statements and job cost analysis, which were usually incomplete, and unable to be verified for accuracy. Repeated requests of Martin Hopwood, the Chief Financial Officer and Chief Operating Officer of Debtor, were typically unanswered or were met with excuses for their non-production. The financial statements which were produced, often nine months after the end of a quarter, were prepared by William Levine, and were rudimentary lists of assets and income with no accompanying accounting data with which to perform a meaningful and comprehensive analysis. The reports supplied failed to include data from book keeping records and failed to include records of transactions within the Hopwood Family. What the reports did reveal was the precarious financial condition of Debtor. When alerted to this problem, Lawrence Hopwood insisted upon explanations for both the lack of timely financial statements and the problems with cash flow that Martin Hopwood cited as his main financial concern. Larry Hopwood was told by Martin Hopwood that the company needed to borrow money in order to grow. To this end, Martin Hopwood arranged for yet another refinance of the Debtor's property located on Marbledale Road to ease the cash flow problem. In addition, Martin Hopwood arranged to factor the Debtor's receivables through a third party in return for advance payment. All of the foregoing

was over Lawrence P. Hopwood's objection which he expressed at many meetings in which Martin Hopwood insisted that corporate growth was impossible without borrowing.

4.   The business relationship between Lawrence P. Hopwood and his brothers had deteriorated to the point that co management of the company by Martin Hopwood and Lawrence Hopwood was almost impossible. I was requested to serve as the go between in negotiating the terms of a buyout between Lawrence P. Hopwood and his brothers. It was fully understood that Lawrence P. Hopwood no longer wanted any part of the Debtor and a determination was made to value Lawrence's interest in the business and convert same into a buyout over a five (5) year period following which his interests would be fully paid for.   Lawrence P. Hopwood clearly stated his full expectation of terminating any and all ownership in the Debtor, including stock transfer and relief from all company debt.

5.   I have reviewed the annexed series of emails exchanged between the parties and their lawyers which comports with my recollection of the terms discussed and ultimately agreed upon between the parties. The agreement entered fully contemplated a buyout of Lawrence P. Hopwood's interest in the Debtor's business by his brothers, and was not a mere severance of an employment relationship with the retention of any ownership interest in the Debtor by him.

6. I have reviewed the Examiner's report filed in the Bankruptcy proceeding and have discovered a number of problems, particularly with regard to alleged loans of Martin Hopwood to the corporation. Based on my review of the foregoing, I can offer the following conclusions:

     a.   The period of review, which began on or about April 9, 2007 and ended on or about April 9, 2009 is too short and provides too little data upon which to draw conclusions about the finances of Richards Conditioning Corp.

     b.   Certain transactions made by Martin Hopwood in which funds were transferred

back and forth between Richards Conditioning and a personal account controlled
by Martin are troubling and raise suspicion of self-dealing. No legitimate
business operates with this type of cash movement from the company to one of its
principals, especially without disclosure to other shareholders and managers.

c. The report concludes a net loan from Martin Hopwood to Richards Conditioning
of $1.5M. The audit, which only took into account a two year period, does not
reflect the amount of money in the Martin Hopwood personal account at the
beginning of the audit period nor the source of said funds.

d. The aforementioned personal account transaction to and from Richards
Conditioning, were neither disclosed to myself in my capacity as a financial
consultant, nor to Lawrence P. Hopwood in his capacity as President of Richards,
again raising questions as to the propriety and purpose of these transactions.

e. The report itself is an internal product, controlled in great deal by Martin
Hopwood. It would be impossible for me to review the report outside the context
of Martin's record of frustration and delay through the untimely production of
financial statements and job cost analysis.

In sum, the audit was conducted during a short period of time, and was specifically
looking for issues relating to litigation involving the Sheetmetal Workers Union.
It should be noted that Martin Hopwood was and is in sole control of any financial
information about Richards Conditioning. This fact means that reports of financial
activity can be incomplete and unreliable, made apparent by the discovery of these
transactions to and from a personal account belonging to Martin Hopwood only now.
The report therefore should not be considered a complete accounting of Richards

Conditioning finances.

7. I have read the above statement and it is true and accurate to the best of my knowledge

and recollection.


Dated:    October ___, 2011                            _____
                                                        MATTHEW KOLB

HOME    F.A.Q.    SERVICES    FEES    SMALL BUSINESS    RESOURCES    CONTACT US



M.J. Kolb Advisors, LLC
*Your Financial Prosperity*
914-473-2188

**Professional Services for Individuals & Small Business**

- Personal Financial Planning
- Financial Administration-CFO
- Divorce Planning
- Business Plans
- Debt Reduction Strategies
- Operations Management
- College and Retirement Plans
- Sales Training
- Record Keeping
- Succession Planning and HR

**M.J. Kolb Advisors, LLC is an independent, fee based financial advisor to individuals and small businesses. We're located in Bronxville, NY, Westchester County.**

Our **Basic Services** for individual clients include the following:

| Individuals | Small Business |
|---|---|
| **Personal Financial Planning** | **Financial Administration-CFO** |
| **Divorce Planning** | **Business Plans** |
| **Debt Reduction Strategies** | **Operations Management** |
| **College and Retirement Plans** | **Sales Training** |
| **Record Keeping** | **Succession Planning and HR** |

### Peace of Mind



The mission of M.J. Kolb Advisors is to help our clients gain control of their personal financial affairs. Our experience with financial institutions like banks, brokerage firms and insurance companies can help clients get the assistance they need at a cost that is fair and appropriate. We can help clients find the right advisors and institutions and help them monitor their existing relationships. Our approach is independent and without conflict of interest from sales commissions or company affiliations. We are paid only by our clients, on an hourly basis, at predetermined rates. Each client knows in advance what our charges will be and what they can expect.

### Client First



The purpose of our fee based business model is to focus exclusively on the best interest of every client. We provide advice that guides each client through their dealings with financial institutions and helps negotiate the best arrangements for their wealth and security. Our monitoring and reporting services allow clients to stay on top of their financial goals and get the best results from their financial relationships. For over 30 years Matthew J. Kolb has been helping clients successfully navigate the financial world and gain control of their personal finances.

### Conservative Approach



The firm's investment approach is both conservative and cost sensitive. We believe that attention to details like management fees and transaction costs can make a substantial difference



in investment returns over any time frame. A cost sensitive approach works especially well with a low risk investment strategy focusing on capital preservation and financial security. Weather you are seeking to preserve or accumulate wealth, our approach is to designed to ensure a secure financial future.

Peter Lynch, one of the greatest investors of all time, was interested in ideas that could be explained simply; preferably on the back of a napkin. He believed and understood that complicated investments increase risk, and therefore he looked for things that made common business sense. We believe that an individual should manage their assets with the same outlook.

M.J. Kolb Advisors approaches each client's goals with sound investment principles that seek to eliminate risk while working for solid and consistent returns.

### Fairness and Value



Most importantly, M.J. Kolb Advisors believes that advice should be objective and independent to be truly valuable. Therefore our fees are billed on a hourly basis. After an initial consultation at no charge, the client knows exactly what our services will cost and what results they should expect if they choose to hire us. There are no hidden fees, no commissions and no surprises. Many clients use our services as a second opinion for their own investment decisions while others request regular advice and monitoring to assist with their overall financial plan. Whatever the case, each client receives *objective advice, a depth of knowledge, and personal attention*.

### Matthew J. Kolb

Matt Kolb spent the early years of his career with the Lehigh Valley Title Company, in Bethlehem, Pennsylvania, where he was involved with all aspects of real estate development and finance on behalf of the firm's partners and major clients, eventually gaining responsibility for the firm's entire operations. In 1980 he became an investment portfolio manager for the Trust Department of Merchants Bank in Allentown, Pennsylvania, working with investment clients and co-managing the bank's trust portfolio. For 20 years he was a representative of the Private Client Services division of Alex Brown and Sons, Baltimore Maryland, where he managed the financial affairs of wealthy individuals. He also managed the firm's Private Client Sales offices in both Atlanta and New York. He holds a B.A. Degree from Moravian College, an M.B.A. from Lehigh University, and an M.S. Ed. from Long Island University. Matt is also an adjunct professor in the Lubin School of Business at Pace University in Manhattan. He and his family reside in Bronxville, New York

Copyright 2007 M.J. Kolb Advisors, LLC
13 Park Avenue Terrace Bronxville, NY 10708

11/30/2010 1:36 PM

# EXHIBIT C

**From:** Larry Hopwood
**Sent:** Friday, February 29, 2008 9:15 AM
**To:** Martin M. Hopwood, Jr - RCC
**Cc:** Rich Hopwood - RCC
**Subject:** RE: Advances to RCC
**Importance:** High

Where did the cash go for the last several years under your supervision—provide a breakdown???????????

---

**From:** Larry Hopwood
**Sent:** Friday, February 29, 2008 9:11 AM
**To:** Martin M. Hopwood, Jr - RCC
**Cc:** Rich Hopwood - RCC
**Subject:** RE: Advances to RCC

Ok----------you started this again.
BY PUTTING THIS IN WRITING TO Donna Carr here is my response.
1.) You and Rich have mismanaged the operation and the finances in these companies for years.
2.) You can blame me all you want.
3.) I will leave tomorrow if you want.
4.) I will dissolve all agreements and finances today.
5.) I will continue RCC on my own under a separate name
6.) Lets bring in the accounts and the bank and MATT discuss the financial management of this company
7.) Lets discuss wages as compared to actual job descriptions.
8.) Lets discuss the relative importance of each individual to the survival of this company.
9.) Is AUS still an expense.
10.) Is L&M still an expense.
11.) Is Task still an expense?
12.) Is Allied still an expense.
13.) Is HFP still a scam?
14.) Are the whole financial workings of RCC a convoluted mess of bullshit?
15.) Were there several hundreds of thousand of dollars wasted on entertainment expenses and over paid employees salaries and mismanaged employees?
16.) Is the overhead in RCC too high to compete?
17.) Is the RCC overhead to high to make a profit?
18.) Are the management salaries and perk abuses by you and Rich and the foreman too high?
I make estimating errors all day long. I make decision mistakes all day long. I know and can admit to my mistakes.
I also do the bidding, the labor estimating, the equipment bid comparisons, the daily service manpower, the job manpower for all trades, the change orders, service contracts, design of sheet metal systems-steamfitting systems, hot---chilled----steam----air----underground pipe or duct, radiant heat, boilers, generators, etc.......... buyouts, cad management, drawing coordination, project management, project problem solving, control installation supervision and start up coordination, project close out and all punch lists, meet with customers, handle all technical issues, I survey jobs that have technical problems, I have filed experience in service, sheet metal, piping, insulation, I can install everything that we do in the field, I can fix everything we install----------now you say we are equals.
I do not have time for your bullshit anymore.
You and rich buy me out or begin finding other employment.
So ----my way or I am leaving.
I never put money up because you two had this place all fucked up.
NOW WHO IS IN THE MESS????????????? The two you or me?????????
IT IS YOUR CALL NOW.
THE DEBT WAS A RESULT OF MISMANAGEMENT BY YOU AND RICH AND ALL THE TAKE AND NOTHING ON THE GIVE.

---

**From:** Martin M. Hopwood, Jr - RCC
**Sent:** Friday, February 29, 2008 8:24 AM
**To:** Larry Hopwood
**Cc:** Carr, Donna; Marlow, Patty; Rich Hopwood - RCC
**Subject:** Advances to RCC


Attached is a summary of all xxxx **_loan_** to RCC (net of any repayments) made by MMHJR and RJH to RCC that you **_(bullshit)_** requested. Please note this schedule was prepared by me with the documented information given to me by HVB from its records. The Bank can verify all these transactions. I have also attached a PDF copy of below.

**Cc:** 'Greg Holcombe'; 'Matt Kobb'; dofjr@aol.com; Kerry Hopwood; Jed Annabi - RCC
**Subject:** RCC CUSTOMERS AND CLIENTS AND VENDORS

Martin & Rich,
I am not sure what to tell some of the RCC vendors, customers, clients, and contacts about my status at RCC.
I am not to familiar with NY State corporate or partnership law. So I need some answers to some questions that I have.
1.)    Is it true that you and RICH can vote me out as CEO of RCC?
2.)    If that is true, do you plan on executing that option soon? I would need to know ASAP?
3.)    I think some of these customers and clients need to know as well. COOPER UNION????????
4.)    If that is true do you know if there is a non-compete clause in the RCC stockholders agreement? Are there any bylaws for RCC?
5.)    Do the bylaws of RCC restrict any employee from owning another business, not in construction, while being employed at RCC?
6.)    Do the bylaws of RCC restrict any employee from owning another business, in direct competition with RCC, while being employed by RCC?
7.)    Can you send a copy of the bylaws to lawyers email listed above for his review?
Do you want me to copy your lawyer on these emails?
I have some other questions to ask both you and RICH so stay tuned.

---

**From:** Larry Hopwood
**Sent:** Friday, March 14, 2008 4:54 AM
**To:** 'Colletta, Steve'; DaRos, Robert; Martin M. Hopwood, Jr - RCC
**Subject:** 2640- Cooper union

STEVE,
I am available anytime today to speak with you. Please set a time convenient for you and Martin.
Thanks larry

---

**From:** Colletta, Steve [mailto:SColletta@FJSciame.com]
**Sent:** Thursday, March 13, 2008 9:24 PM
**To:** Larry Hopwood; DaRos, Robert; Martin M. Hopwood, Jr - RCC
**Subject:** Cooper union

Dear Larry and Marty,

I would like to talk to you tomorrow if you are both available re: cooper.

Thanks!

Steve

**From:** Kefhy@aol.com
**Subject:** **Fwd: RCC BUY OUT-032608-lph**
**Date:** March 26, 2008 10:59:41 PM EDT
**To:** DOFJR@aol.com, coldspring2750@optonline.net
**Cc:** Kefhy@aol.com, Marty@richardsconditioning.com



lph-032608-added tem #12

From: Kefhy
To: DOFJR
CC: Kefhy, Marty@richardsconditioning.com
Sent: 3/26/2008 9:51:30 P.M. Eastern Standard Time
Subj: RCC BUY OUT-032608-lph

Mr. Fuller,
My apologies for not returning your call sooner but this process has been time consuming and complicated.
There is, however, a conclusion finally that I can now report to you. If, you are still willing to represent me here
is the final recap.
I am leaving RCC. Martin & Richard Hopwood are buying me out. The buy out is over a five year period and
the other stipulations are as follows;
1.)   YEAR #1- $250,000.- payable over 52 weeks
2.)   YEAR #2- $325,000.-   ditto
3.)   YEAR #3- $325,000.-   ditto
4.)   YEAR #4- $325,000.-   ditto
5.)   YEAR #5- $275,000.-   ditto
6.)   No non compete clause-except to not infringe upon existing RCC contracts
7.)   ALL SETTLEMENT MONIES TO LPH ARE ****PERSONALY**** GUARANTEED BY BOTH MH & RH. NO
CORPORATE GUARANTEES.
8.)   LPH to receive RCC quarterly financial reports and end of year statements. LPH to receive MH & RH W2's.
9.)   LPH is permitted to start a service company and or a sheet metal company and or steam fitting company
that may compete in the same geographical areas as RCC.
10.) LPH is free of any and all past, existing and or future debt, liabilities, loans, mortgages, that pertain to RCC,
Allied, Task, AUS, L&M, Clover Corp corporately or any personal loans, debts, mortgages, liabilities
that MH and or RH may have with RCC. LPH has *Z*E*R*O* debt obligation with regard to RCC.
11.) LPH will turn over all RCC stock to MH & RH
12.) The 2 existing car leases, one Volvo and one Lexus, will be paid for by RCC or MH or RH until the end of
the lease periods. All regular maintenance items will be paid by LPH that are not covered under the lease.
David, let me know if you are willing to represent us in this matter.
Thanks,
Larry Hopwood

Create a Home Theater Like the Pros. Watch the video on AOL Home.



From: LPH1919@aol.com
**Subject: MH-BUY OUT AGREEMENT**
Date: April 28, 2008 11:02:12 AM EDT
To: DOFJR@aol.com
Cc: Kefhy@aol.com, coldspring2750@optonline.net, greg.holcombe@yahoo.com

David,
Any update on the agreement from the lawyers?
Should we send them a letter pushing this effort along?
Larry

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

*Fuller*

**From:** dofjr@aol.com
**To:** LPH1919@aol.com
**Subject:** Re: MH-BUY OUT AGREEMENT
**Date:** Mon, 28 Apr 2008 4:20 pm

Dear Larry,

The lawyer called to say he planned to be away, but would be sending us requested documents this week. I shall let you know when they arrive. He said he will work on the agreement when he gets back which should be in a week or so. Best,

David Otis Fuller, Jr., Esq.
Bosworth, Gray & Fuller
116 Kraft Avenue
Bronxville, NY 10708-4185
(Tel) 914-337-3626
(Fax) 914-337-3630

-----Original Message-----
From: LPH1919@aol.com
To: DOFJR@aol.com
Cc: Kefhy@aol.com; coldspring2750@optonline.net; greg.holcombe@yahoo.com
Sent: Mon, 28 Apr 2008 11:02 am
Subject: MH-BUY OUT AGREEMENT

David,
Any update on the agreement from the lawyers?
Should we send them a letter pushing this effort along?
Larry

---

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

---

Plan your next roadtrip with MapQuest.com: America's #1 Mapping Site.

From: LPH1919@aol.com
Subject: **Fwd: MH-BUY OUT AGREEMENT**
Date: April 29, 2008 9:23:11 AM EDT
To: Kefhy@aol.com, greg.holcombe@yahoo.com, coldspring2750@optonline.net

From: DOFJR
To: LPH1919
Sent: 4/28/2008 3:20:08 P.M. Eastern Standard Time
Subj: Re: MH-BUY OUT AGREEMENT

Dear Larry,

The lawyer called to say he planned to be away, but would be sending us requested documents
this week. I shall let you know when they arrive. He said he will work on the agreement when he
gets back which should be in a week or so. Best,

David Otis Fuller, Jr., Esq.
Bosworth, Gray & Fuller
116 Kraft Avenue
Bronxville, NY 10708-4185
(Tel) 914-337-3626
(Fax) 914-337-3630

-----Original Message-----
From: LPH1919@aol.com
To: DOFJR@aol.com
Cc: Kefhy@aol.com; coldspring2750@optonline.net; greg.holcombe@yahoo.com
Sent: Mon, 28 Apr 2008 11:02 am
Subject: MH-BUY OUT AGREEMENT

David,
Any update on the agreement from the lawyers?
Should we send them a letter pushing this effort along?
Larry

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

Plan your next roadtrip with MapQuest.com: America's #1 Mapping Site.

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

# *Glenn Backer*

*Attorney At Law*
*292 Madison Avenue (22nd Floor)*
*New York, New York 10017*

*Tel: (212) 686-7644*
*Fax: (212) 685-2425*
*gbackerlaw@aol.com*

March 13, 2008

<u>BY E-MAIL AND BY MAIL</u>

Mr. Richard J. Hopwood                    Martin Hopwood, Esq.
L&M Distributors, Inc.                    L&M Distributors, Inc.
80 Marbledale Road                        80 Marbledale Road
Tuckahoe, New York 10707                  Tuckahoe, New York 10707

> **Re:** **Richards Conditioning Corp., L&M Distributors, Inc. and Hopwood**
> **Family Partnership**

Dear Richard and Martin:

This will confirm that you have retained Timothy F. Willert, as corporate counsel, and me to represent you with respect to the dispute with your brother Larry Hopwood and its impact on the above-referenced corporations and partnership.

Tim expects to perform, among other things, the following work:

1)      Review all available corporate tax returns and any other existing corporate documents      setting forth information about shareholders, number of shares, officers, directors, or related agreements;

2)      Order certified copies of the Certificate of Incorporation from the Department of State;

3)      Review the family partnership agreement evidencing ownership of the property and establish title;

4)      Review your emails to me stating all your recollections about the number of shares and/or corporate structure;

Mr. Richard J. Hopwood
Mr. Martin Hopwood
March 13, 2008
Page 2

5)    Order replacement corporate kit with new share certificates and corporate seal, if necessary;

6)    Draft by-laws, minutes, notices to shareholders and attend shareholder and director meetings for necessary shareholder corporate action to bring the corporation into compliance with shareholders' understanding of past corporate structure and update similar corporate records of L&M Distributing Inc.;

7)    Draft any agreements, trusts or other instruments requested by vote of shareholders or desirable in estate planning.

Take all action necessary to protect you, your father and mother, the two corporations and the partnership against your brother Larry.

In consideration for our services, you have agreed to pay us at the rate of $275 per hour.

You shall be responsible for all disbursements including, but not limited to, messenger service, overnight deliveries, photocopying, long distance telephone calls, postage, court reporter fees, transportation, etc.

I will send you a monthly bill for legal fees and disbursements which will include my time and Tim's time. You have agreed to keep the monthly invoices current by payment thereof within 30 days after receipt.

In the event a dispute arises relating to my fees, you may have the right to arbitrate the dispute pursuant to Part 137 of the Rules of the Chief Administrator of the Courts, a copy of which will be provided to you upon request.

Mr. Richard J. Hopwood
Mr. Martin Hopwood
March 13, 2008
Page 3

        If the foregoing is acceptable, please sign a copy of this retainer agreement and return it in the enclosed stamped self-addressed envelope.

Very truly yours,

*Glenn Backer*

Glenn Backer

*Timothy F. Willert*

Timothy F. Willert

**CONSENTED TO AND AGREED:**

_____

**RICHARD J. HOPWOOD**

_____

**MARTIN HOPWOOD, ESQ.**



From: LPH1919@aol.com
Subject: **LETTER-#1-040208**
Date: April 3, 2008 3:26:14 PM EDT
To: DOFJR@aol.com
Cc: Kefhy@aol.com

David,

I will be dropping off a check in a few hours. The following is a new update for your review;

1.) I have a growing concern that Martin & Richard will not make it through the next three years in order to pay me on a five year buy-out.

2.) Neither of them really know how to run a mechanical contracting firm.

3.) I met with my parents today and stressed my concerns that Martin and Rich will never make RCC profitable and that their behavior has been focused on their personal gains and not on the survival of RCC as a company. My mother appears to be siding with Martin & Richard in the hopes that I will return to RCC.

4.) I provided my opinions to my parents as proof of some of their total disregard for standard business practices such as financial reporting, maintaining positive check balances, reducing overhead, reducing perks and luxuries, etc.....

5.) I think it is necessary and prudent to prepare a mutually reviewed and approved ****non-threatening**** letter from you stating our requests and demands for additional information.

6.) The letter will request the following, (which my parents stated that I am owed full disclosure to),;

   a) 2007 end of year reports for all companies

   b) RCC Dec 31st 2007 quarterly report

   c) RCC Mar 31st 2007 quarterly report

   d) All new loan activity for RCC since February !, 2008

   e) All end of month banking, checking, loan, mortgage, credit line, statements, and leases as of March 31st, 2008 for L&M, Task, Allied, AUS, RCC, Payrolls

   f) All financial documentation of all Martin & Loretta Hopwood estate finances, loans, collateral, etc...

   g) All paperwork and analysis, which is a financial summary of all past and present experiences, that "Marty is preparing for all five family members to review".

   h) Provide documentation as to the status and the whereabouts of the monies for the "CD which was given to Marty" as requested by Loretta Hopwood.

   i) Provide documentation as to the whereabouts of a tuition check that had been requested by Loretta H. to be forwarded to Tarra Hopwood sometime in 2007.

I would like to put a five day deadline on this request. I would like to make the letter appear to be an attempt to assist the process of concluding the buy out. I am fearful that if RCC does not make it I need to start a new career or a new mechanical company sooner than later

Let me know if you want me to come to your office.

Thanks

Larry

Planning your summer road trip? Check out <u>AOL Travel Guides</u>.



From: LPH1919@aol.com
Subject: **Re: letter-040408-lph-RCC**
Date: April 4, 2008 9:53:19 PM EDT
To: DOFJR@aol.com
Cc: Kefhy@aol.com

David,
I would like this letter to come from you and send it to Mr. Glenn Backer their lawyer. I want to turn the pressure up
ASAP. Certified mail is the correct method. Thanks----Larry

In a message dated 4/4/2008 2:49:35 P.M. Eastern Standard Time, DOFJR writes:

> Dear Larry:
>
> I suggest that you send this by certified mail, return receipt requested. If they do not respond in a few
> days, let me know and we can send something from this office. I am required to write to their lawyer.
>
>
> David Otis Fuller, Jr., Esq.
> Bosworth, Gray & Fuller
> 116 Kraft Avenue
> Bronxville, NY 10708-4185
> (Tel) 914-337-3626
> (Fax) 914-337-3630
>
> Get the MapQuest Toolbar, Maps, Traffic, Directions & More!

Planning your summer road trip? Check out AOL Travel Guides.

April 8, 2008

BY EMAIL and REGULAR MAIL

Glenn Backer, Esq.
292 Madison Avenue, 22nd Floor
New York, NY 10017

      Re: Richards Conditioning Corp. ("RCC")
          Proposed Buyout Agreement ("Agreement")

Dear Mr. Backer:

This letter is written to request information for our review to facilitate an analysis of the Agreement that I understand you are preparing and to which our client, Larry Hopwood, as shareholder and family member, is proposed as a party. I understand that the other proposed parties to the Agreement maintain the corporate financial records as well as the financial records for the family and the estate.

The documents we are requesting are:

1.      The latest building appraisal and all mortgages or liens attached to the RCC building
2.      The RCC September 2007 end-of-year financials
3.      The December 31, 2007 and March 31, 2008 quarterly reports for RCC
4.      The most current HFP end-of-year financial statements and tax returns
5.      The most current Allied, AUS, L&M, Task financial statements and tax returns
6.      The family financial summary and recapitulation in the possession of the other parties
7.      All loan documentation that are attached to RCC, HFP, Task, Allied, AUS and L&M.
8.      The most current payroll monthly report
9.      The most current and accurate financial summary of the estate documents for Martin and Loretta Hopwood

10.    Any and all information regarding the whereabouts of a tuition gift for Ms. Tana Hopwood.

11.    As per Loretta Hopwood, please provide information regarding the "CD" which was turned over to Martin Jr.

12.    Any documentation pertaining to any new additional loans or funding that RCC or HFP, Task, Allied, AUS, or L&M have created since March 1, 2008.

13.    Six months of any and all loan, lien or mortgage payments paid by RCC.

Please let me know when you expect the draft Agreement to be available. We would like the above-listed information to be provided to this office by the end of this week. Kindly advise by return email if you desire anything further from us.

Sincerely,

David Otis Fuller, Jr.

cc: Mr. Larry Hopwood



**From:** LPH1919@aol.com
**Subject: Fwd: MH & RH SETTLEMENT-041808**
**Date:** April 18, 2008 2:57:58 PM EDT
**To:** coldspring2750@optonline.net, greg.holcombe@yahoo.com, Kefhy@aol.com

From: DOFJR
To: LPH1919
Sent: 4/18/2008 12:52:32 P.M. Eastern Standard Time
Subj: Re: MH & RH SETTLEMENT-041808

Dear Larry,

Thanks for writing. Nothing at this end. We just need to see that contract. Best,

David Otis Fuller, Jr., Esq.
Bosworth, Gray & Fuller
116 Kraft Avenue
Bronxville, NY 10708-4185
(Tel) 914-337-3626
(Fax) 914-337-3630

-----Original Message-----
From: LPH1919@aol.com
To: DOFJR@aol.com
Cc: Kefhy@aol.com; coldspring2750@optonline.net; greg.holcombe@yahoo.com
Sent: Fri, 18 Apr 2008 12:16 pm
Subject: MH & RH SETTLEMENT-041808

David,
Just checking in ------any word from their lawyer or any progress on your end?
There is nothing at this end to report.
Larry

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

Get the MapQuest Toolbar, Maps, Traffic, Directions & More!

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

(no subject)                                                                    Page 1 of 1

**From:** LPH1919@aol.com
**To:** marty@richardsconditioning.com
**Cc:** greg.holcombe@yahoo.com; coldspring2750@optonline.net; Kefhy@aol.com; DOFJR@aol.com
**Subject:** (no subject)
**Date:** Mon, 21 Apr 2008 10:23 am

Marty,
What is the status of last weeks paycheck?
lph

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

FULLER **

**From:** LPH1919@aol.com
**To:** DOFJR@aol.com
**Cc:** Kefhy@aol.com; coldspring2750@optonline.net; greg.holcombe@yahoo.com
**Subject:** MH-BUY OUT AGREEMENT
**Date:** Mon, 28 Apr 2008 11:02 am

David,
Any update on the agreement from the lawyers?
Should we send them a letter pushing this effort along?
Larry

---

Need a new ride? Check out the largest site for U.S. used car listings at AOL Autos.

*Dear Larry,*

*The lawyer called to say that he planned to be away, but would be sending us the the the requested documents this week. I shall let you know when they arrive. He said he will work on the agreement when he gets back which should be in a week or so.*

*Best,*

**From:** Martin M. Hopwood, Jr - RCC <Marty@richardsconditioning.com>
**To:** LPH1919@aol.com
**Cc:** Kefhy@aol.com; DOFJR@aol.com; coldspring2750@optonline.net; Rich Hopwood - RCC <RJH@richardsconditioning.com>
**Subject:** RE: PAY CHECK-071908
**Date:** Mon, 21 Jul 2008 5:29 am

---

Check was to be dropped on Friday. Jennifer forgot. There at 7am this morning.
Not interested in buyout for the record.
Documents will be to your lawyer in next 10 days.

*NOT INTERESTED IN LPH BUYING OUT MH+RH ∴ THIS MEANS MH+RH ARE STILL BUYING ME OUT*

Thank You

*Martin M. Hopwood, Jr.*

**Vice President and Chief Financial Officer Richards Conditioning Corp.**

*Email: rcc@richardsconditioning.com*

*Office: 1-914-337-8545*

*JED NEEDS TO PUT IN WRITING THE STORY HE TOLD ME ABOUT MARTY SAYING EITHER TO HIM OR IN FRONT OF HIM, THAT "LARRY) IS COMPETING AGAINST RCC (RE: ___ JS- I forgot) AND THATS NOT*

*Fax: 1-914-337-5404*

*Cell: #1-1-914-419-3872*

This e-mail may contain confidential and/or privileged information. If you are not the intended recipient or have received this e-mail in error, please notify the sender immediately and destroy/delete this e-mail. You are hereby notified that any unauthorized copying, disclosure or distribution of the material in this e-mail is strictly prohibited.

---

**From:** LPH1919@aol.com [mailto:LPH1919@aol.com]    *ALLOWED B/C OF BUYOUT!!!.*
**Sent:** Sunday, July 20, 2008 10:05 AM
**To:** Martin M. Hopwood, Jr - RCC
**Cc:** Kefhy@aol.com; DOFJR@aol.com; coldspring2750@optonline.net
**Subject:** Fwd: PAY CHECK-071908

WHAT IS THE STATUS OF THE PAYCHECK FOR 071808??
WHAT IS THE STATUS OF THE LEGAL AGREEMENT??
FOR THE RECORD MY OFFER STILL STANDS TO BUY YOU & RICH OUT OF RCC.
LPH-072008

---

From: LPH1919
To: marty@richardsconditioning.com
Sent: 7/19/2008 1:52:31 P.M. Eastern Standard Time
Subj: PAY CHECK-071908

WHAT IS THE STATUS OF THE PAY CHECK?????
lph
071908

---

From: "larry hopwood" <lph@kfhllc.com>
Subject: **RCC VS LPH-032409**
Date: March 24, 2009 6:33:09 AM EDT
To: "'Stephen Hochhauser'" <shochhauser@BertineHufnagel.com>
Cc: "'Kerry'" <kefhy@aol.com>

Stephen,

Please review the following items of concern that have become increasingly obvious and dramatic over the last 2 to 3 weeks. Some of this is first hand information from an employee at RCC and the remainder is my opinions on the situation as this unfolds.

To start off with I received a check today, which is 2 weeks late, that is on a CompuPay document that was definitely not produced by CompuPay but was printed @ RCC without all the standard check information such as year to date information. These are the type of checks that are not clearing at Hudson Valley Bank.

1.) The paychecks that are being issued by RCC are not funded at Hudson valley Bank by RCC.
2.) The employees have run out of check cashing stores in Westchester that will accept these checks.
3.) The employees are told-----"if you do not like quit and go back to the union or go and get another job."
4.) RCC is depositing the project payments and receipts into another bank other than Hudson Valley Bank. Rumor has it that it is the Chase(Wachovia) bank in Tuckahoe.
5.) It has been stated that Marty has stated that "my daughter is getting married and I have to pay for that first"
6.) Also, Marty----"I have a lot of money invested in this company and I am going to care of ME first."
7.) Marty, Rich, and Brian are starting a new company under the names of the their three wives.
8.) Statements have been overhead about bankrupting RCC.

Considering that the proceeds to RCC are no longer going into HVB that would make sense. Vendors are not being paid and going after Marty personally.

They do not know how to bid jobs or run the work.

Can we accomplish any of the following requests?

1.) Put in writing that we expect SETTLEMENT DOCUMENT IN 10 DAYS.
2.) If there is not any document in 10 days that we will demand a REVIEW OF THE RCC, TASK, L&M, AUS, ALLIED, PRAGUE, HFP, AND ALL DISBURSEMENTS OVER THE LAST 10 YEARS.
3.) Can we state that we will bring in a FORENSIC ACCOUNTANT into the company?
4.) I would like you to speak directly to the HVB bank on my behalf.
5.) How can we tell them that we know there are funds being funneled to another BANK?
6.) It is not long before these vendors start coming after me.
7.) CAN WE DEAMND TO SEE WHERE THE MONEY IS GOING?

If Hudson Valley is not getting any payments they are running from their obligations completely. CAN WE CONFIRM THIS THROUGH THE BANK THROUGH YOU?

Obviously, this is now a different ballgame.

Thank you
Larry H.

*KFH CONSTRUCTION & CONSULTING, LLC.*
*230 Fifth Avenue*
*Pelham, New York 10803*

-
O-19147382010

From: "larry hopwood" <lph@kfhllc.com>
Subject: **RCC VS LPH**
Date: March 27, 2009 7:17:20 AM EDT
To: "'Martin M. Hopwood, Jr - RCC'" <Marty@richardsconditioning.com>
Cc: "'Kerry'" <kefhy@aol.com>, "'Stephen Hochhauser'"
<shochhauser@BertineHufnagel.com>, <nyresidence@optimum.net>

OK---here is the way I see it going forward.
I need to know if you are going to honor the buyout agreement Matt Kolb negotiated between RCC---(MH & RH)---and LPH.
The entire universe knows about your plans with the new minority company etc.....I wish you good fortune if that happens.
I am sure you believe and that your lawyers believe you have legal foundations to support your case as do my lawyers.
This is not a threat----however----considering the fact that I honored my side of the buyout agreement, for an entire year,  and did not make any attempt to legally remedy me and your lawyer's delay tactics and non-response for an entire year, I feel you owe me answers today so this drama can end.
If you leave me without any options and answers TODAY I will not have any choice but to take action legally. This is the last offer to settle this without a legal nightmare for all of us.
There is only one question. ARE YOU GOING TO HONOR THE AGREEMENT WE HAVE FOR THE BUYOUT BETWEEN THE THREE BROTHERS?
I hope both of you can see that my intentions here today is to prevent all of ""US"" from spending 2, 3, 4 years litigating this mess. An agreement must be in writing in 48 hours.
*Larry H*

*O-19147382010*
*F-19147382014*
*lph@kfhllc.com*
*C-19145521531*